# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF FLORIDA

**Elena Dvoinik**

Plaintiff

**Boris Zavadovsky**

Plaintiff

-v-

**Elke U. Rolff**

Defendant

**Rolff Law P.A.**

Defendant

**Dale F. Webner**

Defendant

**Miller&Webner P.A.**

Defendant

8:23 cv 623 KKM-CPT

## COMPLAINT

1. Plaintiffs, Ms. Elena Dvoinik and Mr. Boris Zavadovsky, in support of their Complaint against Defendants, Ms. Elke U. Rolff (AKA Stankovic), Mr. Dale F. Webner, Rolff Law P.A., Miller&Webner P.A., hereby state the following:

## NATURE OF THE ACTION

2. This action of FARA violation, fraudulent misrepresentation, invasion of privacy, intentional infliction of emotional distress arises from Defendants espionage activities in the US, including intrusion upon Plaintiffs seclusion and illegal attempts to influence justice and interfere in civil litigation of individuals by deceiving and intimidating Plaintiffs.

3. Acting as foreign agents on behalf on and in interests of foreign principals (Austrian private persons, entities, presumably Austrian instrumental agencies, political parties ÖVP and FPÖ) Defendants willfully omitted to be registered as foreign agent with the Attorney General, misrepresented themselves, deceived Plaintiffs regarding legitimacy of their Austrian principals and power of attorney from their principals, unlawfully obtained and transmitted Plaintiff's confidential information , intimidated and humiliated Plaintiffs. The Defendants obtained information that they were not supposed to have, which was used to carry out malicious prosecution in Austria against Plaintiffs.

4. As a direct and proximate result of the Defendants' actions, Plaintiffs have suffered damages, including harm to their reputation and to their ability to sustain exitance, embarrassment, humiliation, emotional distress.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter and all parties to this action under 28 U.S.C. §§ 1331 and 1345, and also under 22 U.S.C. § 618(f).

6. Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to this action arose from events occurring within this judicial district.

**PARTIES**

PLAINTIFFS

7. Plaintiff Elena Dvoinik is an individual and a resident of State of Florida. Ms. Dvoinik was a target of Defendant's activities. 4949 Marbrisa Dr, 1505 Tampa, Florida 33624

8. Plaintiff Boris Zavadovsky is an individual and a resident of State of Florida. Mr. Zavadovsky was a target of Defendant's activities. 4949 Marbrisa Dr, 1505 Tampa, Florida 33624

DEFENDANTS

9. Defendant Elke U. Rolff (Stankovic) is an individual, the Florida attorney under Bar #698636 and partner of Ralff Law P.A. and a resident of State of Florida. 8818 Harding Ave, Miami Beach, Florida 33154

10. Defendant Dale F. Webner is an individual, Florida attorney under Bar #265241 , CEO and partner of Miller&Webner Law P.A. and a resident of State of Florida. 2442 Poinciana Court, Weston, Florida 33327

11. Defendant Rolff Law P.A. is the Florida law firm in 8818 Harding Ave, Miami Beach, Florida 33154.

12. Defendant Miller&Webner P.A. is the Florida law firm in_2442 Poinciana Court, Weston, Florida 33327

**FACTS.**

13. Ms. Elke Rolff (Stankovic) serves the Republic of Austria, Austrian Ministry of Foreign Affairs, embassies and consulates, Austrian governmental entities and

instrumental agencies, political parties ÖFP and FPÖ, Austrian private entities, corporations, firms and private persons for years.

14. Ms. Rolff acts as a liaison officer between foreign (Austrian) principals and US individuals, entities, corporations and US governmental agencies for years.

15. She is listed on the website of the Austrian Ministry of Foreign Affairs and its embassies and consulates around the world as a "Trusted lawyer of the Republic of Austria in the USA".

16. Besides Ms. Elke Rolff, only 3 US attorneys are listed as "Trusted lawyers of the Republic of Austria in the US".

17. Ms. Rolff admitted to practice law in Florida under the Florida BAR, however she is recommended by the Austrian Ministry of Foreign Affairs as attorney admitted to practice law in ALL US STATES IN ALL LEGAL MATTERS.[1] (EXHIBIT 1).

18. According to information published on the website of the Austrian Ministry of Foreign Affairs and its Consulates:

(https://www.bmeia.gv.at/en/travel-stay/citizens-service-protection-assistance/assistance-in-legal-matters/trusted-lawyers/): (EXHIBIT 2)

19. [Trusted lawyer

Austrian diplomatic representations make use of so-called - Trusted Lawyers - for legal counselling. Individuals requesting legal advice from the diplomatic representation will be referred to the Trusted Lawyer, who charge fees according to official rates. Please note that all fees are to be borne by the client and are not covered by the Austrian diplomatic representation.]

---

1 https://www.bmeia.gv.at/en/embassies-consulates/search-for-austrian-representations/. Only one person is listed as a "Trusted lawyer of the Republic of Austria in Russia". His name is Thomas Olson. Thomas Olson is Julian Assange's lawyer. https://ria.ru/20160205/1370123527.html
https://ria-ru.translate.goog/20160205/1370123527.html?_x_tr_sl=ru&_x_tr_tl=en&_x_tr_hl=de&_x_tr_pto=wapp (EXHIBIT 3)
https://www.theguardian.com/media/julian-assange

20. In the German-language version, this information has a slightly different meaning[2].

21. An accurate translation into English means:

**Austrian diplomatic representations per individual request for legal advices refer exclusively to Trusted lawyers, who charge fees according to official rates.**

22. So-called "Austrian trusted lawyer" Ms. Elke Rolff de facto does not engage in legal business and does not provide legal services to individuals and legal entities, as it is stated on the website of the Austrian Ministry of Foreign Affairs.

23. Her cell phone numbers aren't active, her website isn't working. http://www.rolfflaw.com/ (EXHIBIT 4)

24. Florida BAR is used as a cover for her real business.

25. De facto, she is engaged exclusively in servicing the interests of foreign principals affiliated with Austria, including the Republic of Austria itself, her Consulates and Austrian Embassies.

26. Ms. Rolff is also admitted to practice law in Switzerland. She is involved in multiple international financial and other schemes and affiliated with multiple shell companies.

27. Rolff Law P.A. is registered in a two -bedroom single family house and has no employees except Ms. Rolff. (EXHIBIT 5).

[2]https://www.bmeia.gv.at/reise-services/buergerservice-schutz-hilfe/hilfe-in-rechtsfragen/vertrauensanwaeltinnen/ [Die Vertretungsbehörde verweist Personen, die um Rechtsauskunft ersuchen, grundsätzlich immer nur an ihre Vertrauensanwältin oder ihren Vertrauensanwalt. Die erbrachten Leistungen unterliegen den jeweils geltenden Honorarsätzen.]

28. Upon information and belief, Ms. Rolff carries out various assignments of Austrian corporations, Governmental agencies and entities, including hiring US organizations on behalf of the Republic of Austria to carry out Austrian assignments, lobbing the interests of Austrian principals in the US, accepting payments from these organizations, including payments for bogus legal and consulting services, and uses her company Rolff Law P.A. as a shell company.

29. Ms. Rolff for years works together and cooperates with Mr. Webner and hired him from time to time as an attorney or legal representative for her Austrian clients and principals.

30. It is known to Mr. Webner, that Ms. Rolff acts permanently as an Austrian agent in interests of Austrian principals and under their direction.

31. Mr. Webner and his Law firm are fully involved in the financial schemes and other schemes of Ms. Rolff.

32. Austrian governmental agency (what exactly is to be found out in the process of discovery) after receiving the information from Austrian Central Authority, Federal Ministry of Justice, about complaint and summons in both Plaintiffs' cases, pending in the Middle District Court of Florida[3], in July 2022, contacted Austrian liaison officer in Florida, Ms. Rolff, and instructed her to "clear the situation".

33. The source of Elke Rolff's US finance activities remains to be clarified during the discovery process.

[3] *Case: 8:22-cv-01700-CEH-SPF,*

*Case No. 8:22-cv-01127-TPB-CPT*

34. Ms. Rolff retained Mr. Webner, financed him and developed together with him a plan of action pertaining Plaintiffs' matters.

35. In light of this plan Mr. Dale F. Webner on August 15, 2022 contacted Plaintiffs regarding Case *Dvoinik, Zavadovsky v. Peter Philipp at all [Case No. 8:22-cv-01127-TPB-CPT]* , pending in the Middle District Court of Florida, introduced himself as an owner and CEO of a large legal business in Florida, a specialist in German and Austrian law, with large German and Austrian enterprises as his clients[4], and an attorney of defendant Peter Philipp, Austrian citizen, Viennese lawyer.

36. At first Mr. Webner stated that he did not represent the interests of other defendants in this case except Philipp, and denied any connection with them.

37. Mr. Webner tried to convince the Plaintiffs that Philipps' actions are unrelated to the particular case, since what had happened to the plaintiffs in Austria was planned and carried out by the Austrian special services.

38. He tried to encourage the Plaintiffs to withdraw their claims against Philipp because "Austria will never enforce the US Court decision". [5]

39. Mr. Webner also told the Plaintiffs that "Austria will deal with them "on its own way" through its special channels in the USA" if they will not withdraw all claims".

---

[4] There is no evidence in open sources to support this information. The law firm Miller&Webner P.A. is registered in the single-family home with 5 bedrooms, where Mr. Webner and Ms. Miller reside. There are no other employees except partners in the company. Mr Webner doesn't understand German.

[5] According to Austrian law, decisions of foreign courts are enforceable on the same basis as decisions of domestic courts.

40. Mr. Webner filed on 08/28/2022[6] Notices of appearance and on 08/29/2022[7] Disclosure statement with the Middle District Court, there he indicated himself as a lead attorney for Peter Philipp, Ms. Rolff as Co-counsel of Peter Philipp not currently of record, all defendants and Ms. Miller (partner of Miller&Webner P.A.) as persons and entities who have or might have an interest in case.

41. Mr. Webner willfully omitted to indicate the Republic of Austria, its instrumental agencies or entities as persons and entities who have or might have an interest in this case, despite the fact, that Austria and its agencies were involved and it was known to Mr. Webner.

42. On October 3, 2022, at the initiative of Mr. Webner, a video ZOOM conference was held with the Plaintiffs. The conference was secretly observed by Ms. Rolff (EXHIBIT 6). Plaintiffs did not know that Ms. Rolf will participate in the conference, it was never discussed. Plaintiffs never consented her participation, never consented hidden surveillance. It was absolutely unacceptable.

43. The Plaintiffs were convinced that they were communicating only with Peter Philipp's attorney, Mr. Dale Webner.

44. The Plaintiffs did not know and did not assume that the conference was being overheard by a person affiliated with the Republic of Austria.

45. During the conference, Mr. Webner informed the Plaintiffs that he had been hired by Austria and Elke Rolff, an Austrian Counsel in USA. Austria finances and will financing all processes and "will deal with the Plaintiffs through its channels in the

[6] Case 8:22-cv-01127-TPB-CPT Docket 21
[7] Case 8:22-cv-01127-TPB-CPT Docket 24

United States and achieve the complete ruin of the Plaintiffs". Mr. Webner intimidated and humiliated the Plaintiffs in many ways, in particular, he asked "whether the Plaintiffs are able to understand English[8], or do they need an interpreter from Yiddish."

46. On 10/13/2022[9] Mr. Webner filed with the Court Motion to withdraw by defendant Philipp's counsel.

47. On 10/28/2022[10] he filed Notice of appearance and indicated himself as a lead counsel for the defendants G. Ebhart, S. Hoeflinger, T. Hoeflinger; Ms. Rolff in Disclosure statement as a Defendants' "Co-counsel not currently of record" . The Republic of Austria as entity which might have interest in the case.

48. On 11/22/2022 a videoconference was held via zoom, in which Mr. Webner, Ms. Rolf, Ms. Dvoinik, Mr. Zavadovsky took part.

49. Ms. Rolf introduced herself as a Representative of the Republic of Austria in the United States and in State of Florida. According to Ms. Rolff, she serves the Republic of Austria in different affairs and matters on the permanent basis for a long period of time, in particular, she performs various assignments for the Austrian Consulate in Florida, in Hollywood. According to Ms. Rolff, she is authorized to settle with the Plaintiffs in both cases.

50. Ms Rolff said that she did not know the details of the Plaintiffs' malicious prosecution in Austria, however that she could "talk" about stopping the prosecution as part of a possible settlement agreement between the Plaintiffs and the Republic of Austria.

51. The Plaintiffs reported:

---

[8] Despite the fact that Boris worked for 35 years as a medical doctor in the US military hospital.

[9] Case 8:22-cv-01127-TPB-CPT Docket 39

[10] Case 8:22-cv-01127-TPB-CPT Docket 50

Their documents, which are essential for the text filing to German IRS and employment (medical license, medical diplomas and certificates, business documents Dvoinik) should be returned to the Plaintiffs ASAP. If the documents would not be returned immediately, the Plaintiffs will not be able to pay current expenses in the near future and will be forced to move to a shelter. The settlement would be possible, if Plaintiffs' unlawfully sized property will be returned back to them and Plaintiffs will be reasonable compensated for the unlawful withholding of their property and documents.

52. The parties agreed that the Plaintiffs would serve the Republic of Austria through diplomatic channels, provide evidence that they were legally possessed the seized property and the parties would begin the discovery process and continue negotiations.
53. The Plaintiffs also provided confidential information about themselves to Ms. Rolff, believing that they were talking to a legal representative of the Republic of Austria.
54. The next day, the Plaintiffs filed with a Middle District Court an unopposed Motion for process service through diplomatic channels, as it was confirmed with Ms. Rolff[11], and urgently flew to Frankfurt (having spent their last savings on the trip) to Germany, where material evidence was kept, and brought 4 containers with documents and evidence for both cases.
55. All evidence and documents were counted and numbered, the documents were scanned and sent to Mr. Webner as ESI, as well as lists of more than 50 witnesses in both cases and disclosure information regarding individuals and organizations that have important information in both cases.

[11] Case 8:22-cv-01700-CEH-SPF Document 12

56. Mr. Webner as well as Ms. Rolff ignored all Plaintiffs attempts to communicate, despite existing agreements.

57. In February 2023, the Plaintiffs informed Mr Webner and Ms Rolff that the German IRS had put a lean on Boris Zavadovsky's pension (currently the Plaintiffs' single source of income, which is necessary for financing of housing and food) due to the failure to provide documents for tax audit per pending request of German IRS for the last 5 years. These documents cannot be provided by the Plaintiffs, as they were illegally seized during a search of their Austrian home on 07/12/2021 and are currently in the possession of the Republic of Austria.

58. The retention of these documents, as well as the retention of the business documents of the plaintiffs and other property, has nothing to do with the malicious prosecution of the Plaintiffs in Austria [12]

59. Mr Webner stated (3 weeks later) that the Plaintiffs' relationship with the German IRS had nothing to do with him or Ms. Rolff. Mr. Webner was allegedly ":hired by the Republic of Austria solely to file a motion to dismiss in both Plaintiffs' cases", and Elke Rolff is allegedly "just a German-speaking counsel".

60. In light of previous events described above, the Plaintiffs demanded an unequivocal explanation of who hired the defendants, who pays for their services, and what kind powers of attorney they have.

[12] In scope of Austrian malicious criminal prosecution, the Plaintiffs are accused of spoofing an optometrist's bill in Miami and illegally obtaining $748 in insurance in Vienna. The Plaintiffs provided all evidence that the doctor's checks were real, provided bank statements for the credit card with which they paid for the visit. The plaintiffs provided a variety of other evidence (photos, stored Google data on movements). Nevertheless, the comedy with the so-called "heavy fraud" continues. Moreover, the judge forbade the plaintiffs to interrogate witnesses in the process and refused to conduct the trial on Zoom, despite the fact that other persons in Austria are tried on Zoom, and this is normal practice.

61. The Defendants refused to produce written powers of attorney from their Austrian principals, financial documents confirming the sources of funding for their activities and any other documents relating to the activities of the Defendants as foreign agents representing the interests of foreign principals.

62. With great surprise and bewilderment, the Plaintiffs discovered the fact that the Defendants were not registered with the Attorney General and FARA Unit as foreign agents.

63. The Defendants communicated with the Plaintiffs for a long period of time, posing as Counsels of Austria and other Defendants, authorized to perform any procedural actions on behalf of their principals, including entering into settlement agreements. Ms. Rolff has not represented the disclosed foreign principal before the Court.

64. . Also, the Plaintiffs, believing that they were dealing with counsels with full authority from the Defendants, fully disclosed information in both cases, as well as provided personal information and handed over to them copies of documents not intended for viewing by unauthorized persons.

**FIRST CAUSE OF ACTION (VIOLATION OF FARA STATUTORY PROVISIONS).**

65. Plaintiffs reallege and incorporate herein by reference the forgoing paragraphs of this Complaint, as if set forth in full.

66. Mr Webner and Ms Rolff and their law firms have operated in the United States for a long period of time and continue to act as foreign agents on behalf of foreign principals. The Defendants omitted to be registered as foreign agent by US Attorney General, omitted to disclose foreign principals for whom/which they were working

and who/which have paid them, concealed the sources of origin of such payments omitted to disclose the scope of their power of attorney from foreign principals and concealed the volume and nature of the activities carried out in the interests of foreign principals.

67. Among the chief purposes of FARA is to inform the American public of the activities of agents in the United States working for foreign principals to influence U.S. Government officials or the American public with reference to the domestic or foreign policies of the United States, or with reference to the political or public interests, policies, or relations of a foreign country or a foreign political party. U.S. agents of foreign principals must register with the Attorney General and make certain disclosures in the registration filings concerning their agency relationships and activities undertaken within the United States on behalf of their respective foreign principals. 22 U.S.C. § 612(a).

68. Under FARA, the term "foreign principal" includes "a government of a foreign country" and "a person outside of the United States," except in circumstances not applicable here. 22 U.S.C. § 611(b)(1)-(2).

69. FARA's "agency" determination is a two-part inquiry that considers both (1) the relationship between the agent and the foreign principal and (2) the activities that the agent performs in the principal's interests. Agency relationships for purposes of FARA include situations where there is an indirect relationship between an agent and a foreign principal through an intermediary. 22 U.S.C. § 611(c)(1).

70. As relevant here, the term "agent of a foreign principal" under FARA means:

> [A]ny person who acts as an agent, representative, employee, or servant, or any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal or of a person any of whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign principal, and who directly or through any other person . . . who acts in the United States in the following ways: soliciting, collecting, or disbursing money or other things of value in the interests of a foreign principal; or representing the interests of a foreign principal before any agency or official of the U.S. government. 22 U.S.C. § 611(c)(1)(iii), (iv) (emphasis added).
> (EXHIBIT 1)

71. Pursuant to FARA, a person or entity who has a registration obligation has a continuing duty to register, even if the FARA-registrable conduct has ceased. 22 U.S.C. §§ 612(a), 618(e). Termination of the agency relationship does not relieve an agent of the obligation to file a registration statement. Id. § 612(a).

72. Pursuant §22 U.S.C. 613 (g)

Exempt from the obligation to be registered as a foreign agent

[Any person qualified to practice law, insofar as he engages or agrees to engage in the legal representation of a disclosed foreign principal before any court of law or any agency of the Government of the United States: Provided, That for the purposes of this subsection legal representation does not include attempts to influence or persuade agency personnel or officials other than in the course of judicial proceedings, criminal or civil law enforcement inquiries, investigations, or proceedings, or agency proceedings required by statute or regulation to be conducted on the record.

73. Neither Mr. Webner nor Ms. Rolff have disclosed foreign principals who retained them and who paid them in all matters concerning Plaintiffs cases in the Middle District Court of Florida.

74. Ms. Rolff was noticed in all 3 Notices of appearance filed by Mr. Webner as Co-Counsel "not currently of record".

75. Mr. Webner repeatedly claimed and informed Plaintiffs that he is acting on behalf of the Republic of Austria and he was hired and paid by Ms. Rolff, who is "permanent

representative and trusted lawyer of the Republic of Austria in the United States in all matters and who receives funding from the budget of Austrian instrumental agencies".

76. The same data (pertaining Ms Rolff) can be confirmed on the web site of the Austrian Ministry of Foreign Affairs, Austrian Embassies everywhere in the world, Austrian Consulates everywhere in the world.

77. In this light the both Defendants could not be exempted from the obligation to be registered according to FARA statute as foreign agents. [13]

78. The Defendants actions contributed to the Plaintiff's malicious prosecution in Austria, interfered in the Plaintiffs civil proceedings in the Middle District Court of Florida and influenced these processes in the interests of the Austrian principals, thereby causing harm to the plaintiffs.

79. Ms. Rolff acted from August 15, 2022 as a foreign agent at least of 16 foreign principals ( 15 Defendants in related RICO case, the Republic of Austria and person/entity/Austrian governmental instrumental agency, unknown at this moment, who/which financed her activities regarding Plaintiffs in US) and willfully omitted to be registered with Attorney General.

80. Mr. Webner acted from August 15, 2022 until October 28, 2022 as a foreign agent of following foreign principals: 14 Defendants in related RICO case, the Republic of Austria, person/entity/Austrian governmental instrumental agency, unknown at this moment, who/which financed her activities regarding Plaintiffs in US, agent and permanent servant of foreign principals Ms. Elke Rolff, and willfully omitted to be registered with Attorney General.

---

[13] https://www.justice.gov/opa/pr/prominent-global-law-firm-agrees-register-agent-foreign-principal Skadden settlement.

81. Defendants' actions were malicious, willful, and an evidence a conscious disregard for Plaintiffs' rights. Accordingly, punitive damages are appropriate.

82. WHEREFORE, Plaintiffs pray for judgment as set forth below.

**SECOND CAUSE OF ACTION (FRAUDULENT MISREPRESENTATION)**

83. Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs of this, especially 34,35,36,37,42,43,44,52,53,54,55,56,59,63,64 of the Complaint as if set forth in full.

84. Defendants have made the false statements of material facts, in particular:

- Concealed and falsified names of their principals.
- Concealed and falsified the sources of financing.
- Concealed and falsified scope of their principals' power of attorney.
- Concealed and falsified scope of their power of attorney.

85. Defendants deliberately produced false statements.

86. Defendants acted in order to induce the Plaintiffs to withdraw the complaints.

87. Defendants wanted to intimidate the Plaintiffs, to make them feel hopeless, believe in the conspiracy theory and senselessness of further litigation process and to induce the Plaintiffs to withdraw all their claims and complaints. The Defendants obtained information that they were not supposed to have. This information was used to carry out malicious prosecution in Austria against Plaintiffs. In addition, the mislead Plaintiffs acted incorrectly from August 15, 2022 and especially from November 22, 2022 to March 2023 and their situation significantly worsened.

88. As a direct and proximate result of these false statements by Defendants, Plaintiffs have suffered damages, including, inter alia, injury to their reputation, harm to their

ability to sustain existence, embarrassment, humiliation, emotional distress, in the amount to be determined at trial.

89. Defendants' actions were malicious, willful, and evidence a conscious disregard for Plaintiffs' rights. Accordingly, punitive damages are appropriate.

90. WHEREFORE, Plaintiffs pray for judgment as set forth below.

**THIRD CAUSE OF ACTION (INVASION OF PRIVACY . INTRUSION.)**

91. Plaintiffs reallege and incorporate herein by reference the forgoing paragraphs of this Complaint, especially 42-44, and , as if set forth in full.

92. The Plaintiffs believed they were communicating exclusively with a Counsel of one of defendants, P. Philipp [Case No. 8:22-cv-01127-TPB-CPT].

93. . Third parties (along with Counsel of other defendants) were completely excluded from participation in zoom conference and the Plaintiffs never gave anybody permission for hidden listening and visual surveillance of Webner's communication with them.

94. The fact of Rolff's presence at the zoom conference grossly violated the Plaintiffs expectation of privacy.

95. Ms. Rolff has unlawfully intruded into Plaintiffs' private affairs, unlawful obtained discloses of their private information to the third parties.

96. Defendants' actions were malicious, willful, and evidence a conscious disregard for Plaintiffs' rights. Accordingly, punitive damages are appropriate.

WHEREFORE, Plaintiffs pray for judgment as set forth below

**FOURTH CAUSA OF ACTION (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**

97. Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs, and especially 38,39,45,58,59 of this Complaint as if set forth in full.
98. Defendant Mr. Webner intentionally intimidated, humiliated and harassed Plaintiffs with the purpose to induce anxiety, fear, shame, guilt, hopelessness, embarrassment, frustration.
99. Defendants consciously contributed to the process of Plaintiffs torture. [Case: 8:22-cv-01700 CEH-SPF].
100. Defendants acted outrageously.
101. Defendant's behavior is shocking and morally unacceptable.
102. Defendants' actions caused Plaintiffs severe emotional distress.

WHEREFORE, Plaintiffs pray for judgment against as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requested that the Court enter an award in Plaintiffs' favor, and against Defendants, as follows:

1)awarding Mr. Zavadovsky and Ms. Dvoinik compensatory damages

For the **FARA violation**; for the **invasion of privacy**; for the **intentional infliction of emotional distress,** for the **fraudulent misrepresentation** of not less than $5.000.000, or in such additional amount to be proven at trial;

2)awarding Mr. Zavadovsky and Ms. Dvoinik punitive damages to the maximum extent permitted by the law.

3)awarding Mr. Zavadovsky and Ms. Dvoinik all expenses and costs, including attorneys' fees; and

4)such other and further relief as the Court deems appropriate.

**JURY TRIAL DEMAND**

Plaintiffs Elena Dvoinik and Boris Zavadovsky hereby demand a jury trial on all issues so triable.

Dated: 03/20/2023

By *ELENA DVOINIK*

Elena Dvoinik

By *BORIS ZAVADOVSKY*

Boris Zavadovsky

4949 Marbrisa Dr 1505

Tampa, Fl 33624

+1(646) 287-94-81

elena.dvoinik@yahoo.com